## Cleminger et al., Appellants, *v.* Baden Gas Co. et al.

*Oil lease—Covenants—Forfeiture.*

Where an oil lease contains a covenant on the part of the lessee " to commence operations on the aforementioned premises, or forfeit this lease within sixty days, and to complete a well on this lease in five months," the lessor may forfeit the lease after the expiration of five months if a well·has not been completed within that time.

*Waiver—Evidence—Oil lease.*

In the above case there was a delay in starting operations within sixty days. The lessee desiring to assign the lease had a conversation with the lessor as to the delay. The result of this conversation he stated to be as follows : " The conclusion was that Mr. Phillips (the lessor) acquiesced in the delay and acknowledged the lease on the assurance that there would be a well put down." *Held*, that there was no waiver of the right to have a well completed within five months.

Argued Oct. 23, 1893. Appeal, No. 560, Oct. T., 1892, by plaintiffs, Frank J. Cleminger and W. G. Hunter, from judgment of C. P. No. 2, Allegheny Co., June T., 1887, No 721, on verdict for defendants, the Baden Gas Co., W. J. Phillips and R. A. Phillips. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment for leasehold premises. Before SLAGLE, J.

At the trial, it appeared that, on Oct. 13, 1886, W. J. Phillips

and R. A. Phillips executed an oil lease to Ira De Witt. The lease contained the following clause : " The party of the second part further covenants and agrees to commence operations on the aforementioned premises or forfeit this lease within sixty days, and to complete a well on this lease in five months." There was evidence that, in November, 1886, De Witt hauled lumber on the leased premises, but apparently there was no actual beginning of operations on the well during the months of November and December, 1886.

In January, 1887, De Witt agreed to assign the lease to plaintiffs. De Witt called upon the Phillipses in reference to this assignment. He testified to the conversation which occurred as follows : " A. We had a general conversation in regard to delays, talked about the bad roads, difficulty of getting around and hauling machinery, tools, lumber and so on. By Mr. McKee : Q. What was the conclusion of this conversation, what was said and done ? A. The conclusion was that Mr. Phillips acquiesced in the delay and acknowledged the lease on the assurance that there would be a well put down, would be developed."

De Witt further testified as follows : " Q. I call your attention to exhibit A, to this part of it : ' party of the second part further covenants and agrees to commence operations on the aforesaid mentioned premises or forfeit this lease within sixty days, and complete a well on this lease in five months.' Was that portion printed in the lease ? A. No, that was written in. Q. Was it written in at that time ? A. Yes, sir. Q. Before it was signed ? A. Yes, sir. Q. You people had been discussing that question ? A. Yes, sir ; we had. Q. And it was agreed you had to commence operations within sixty days and complete a well within five months or the lease was forfeited ? A. That was the terms of the lease ; the forfeiture of the lease depended upon the completion of the wells, as we understood it. Q. Depended upon that ? A. Yes, sir, the five months. Q. Didn't depend also upon the commencement within the sixty days ? A. No, sir ; I didn't so consider it. Q. Did you complete a well there in the five months ? A. What was done after I left there I am unable to say. I simply went on there in pursuance of Mr. Hunter's directions and delivered some

lumber on the ground, and I don't think I was ever back there since."

The well was not completed within five months from the date of the lease.    The Phillipses thereupon notified plaintiffs that the lease was forfeited, and on April 13, 1887, leased the same land to the Baden Gas Co.

The court charged as follows:

"There is no dispute about the fact that the well was not completed within five months, and, under this agreement, I say to you, as a matter of law, that the defendants had a right to forfeit the lease after the expiration of the five months, and they did so.    Therefore, under all the evidence, your verdict should be for the defendants, and you will find accordingly."

Verdict and judgment for defendants.    Plaintiffs appealed.

*Error assigned* was above instruction, quoting it.

*John F. Sanderson, Walter Lyon* and *Charles H. McKee* with him, for appellant.—The right to declare a forfeiture must be distinctly reserved; the proof of the happening of the event on which the right is to be exercised must be clear; the party entitled to do so must exercise his right promptly; and the result of enforcing the forfeiture must not be unconscionable. Thompson v. Christie, 138 Pa. 230; Janes v. Emery Oil Co., 1 Penny. 242; Blair v. Peck, 1 Penny. 247; Smiley v. Gas Co., 138 Pa. 576; Ray v. Gas Co., 138 Pa. 576.

*John C. Thompson,* for appellees.—The clear purpose of the parties to the lease was to have their lands developed, and the forfeiture clause was inserted as a protection to the lessor, and he has the right to take advantage thereof: Ray v. Gas Co., 138 Pa. 591; Smiley v. Gas Co., 138 Pa. 591; Agerter v. Vandergrift, 138 Pa. 576; Mertz v. Vandergrift, 138 Pa. 591; Wills v. Gas Co., 130 Pa. 222; Springer v. Gas Co., 145 Pa. 430; Ogden v. Hatry, 145 Pa. 640; Jones v. Gas Co., 146 Pa. 204; Phillips v. Vandergrift, 146 Pa. 357; Leatherman v. Oliver, 151 Pa. 646; McNish v. Stone, 152 Pa. 457, note; Galey v. Kellerman, 123 Pa. 491; Taylor's Landlord and Tenant, 492; 2 Platt on Leases, 327; Brown v. Vandergrift, 80 Pa. 142; Munroe v. Armstrong, 96 Pa. 307; Kenrick v. Smick, 7 W. &

S. 41; Sheaffer v. Sheaffer, 37 Pa. 525; Davis v. Moss, 38 Pa. 346.

Opinion by Mr. Justice Mitchell, December 30, 1893:

It is true that the right of forfeiture must be distinctly reserved, and that in cases of doubt the courts lean against such a claim.    But this rule does not prevent the operation of the guiding principle in regard to all contracts, that the intention of the parties when ascertained must prevail.    Rules of construction are aids in arriving at the intention, and when that is clear, either with or without resort to them, the court has nothing to do but to carry it out.

The general intent of the covenant in the present case, notwithstanding some little awkwardness in the arrangement of the language, is clearly enough to secure the immediate development of the land.    It is in substance a single covenant for a well, to be commenced within sixty days and completed in five months.    The parties certainly did not mean that a well should be begun within sixty days, and then indefinitely stopped, with no remedy to the lessor but an action on the covenant.    Such a construction would destroy the main object of the clause, the prompt test of the land for oil purposes, and its diligent development.    The gist of the covenant was to have a well finished in five months.    The beginning in sixty days was only material as a step towards that end, and the stipulation for a forfeiture applies equally to both branches of the covenant.    Any other construction would destroy its efficiency for the very purpose of its making.

There was no evidence to connect the possible waiver as to the sixty days with the other part of the covenant.    Even as to the sixty days the evidence of waiver is little more than a scintilla, and as to the other, De Witt, the original lessee says, " the forfeiture of the lease depended upon the completion of the wells, as we understood it . . . . upon the five months," and again, " the conclusion was that Mr. Phillips acquiesced in the delay and acknowledged the lease, on the assurance that there would be a well put down, would be developed."    There was therefore no question for the jury, and the learned judge was right in directing a verdict for the defendant.

Judgment affirmed.